IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: PREMIUM ESCROW             *
SERVICES, INC.
                                  *    Case No. 02-2358
    Debtor
*    *    *    *    *    *         *

PREMIUM OF AMERICA, LLC           *    Adversary No. 04-10455

    Plaintiff                     *

v.                                *

WILLIAM C. SANCHEZ, M.D.          *

and                               *

WILLIAM C. SANCHEZ, M.D, P.C.     *

    Defendants                    *

*    *    *    *    *    *    *    *    *    *    *    *

**DEFENDANTS' MOTION TO STAY DISCOVERY OR, IN THE
ALTERNATIVE, TO EXTEND DISCOVERY; REQUEST FOR
STATUS CONFERENCE; AND JOINT REQUEST TO
EXTEND TIME TO FILE PRETRIAL STATEMENTS**

Defendants William C. Sanchez, M.D. and William C. Sanchez, M.D., P.C., by

and through their undersigned attorneys, hereby request that the Court stay discovery in

this matter or, in the alternative, extend discovery, schedule a status conference, and

extend the time for filing pretrial statements, and for grounds state:

1.      Under the current Scheduling Order, January 20, 2006 is the deadline for

discovery to be completed. January 18, 2006 is the current deadline for the parties to file

pretrial statements.



2.      On or about December 23, 2005, the Defendants filed a Motion to Dismiss All Investor-Related Claims for Lack of Subject Matter Jurisdiction or, in the Alternative, for Severance of All Investor-Related Claims ("Motion to Dismiss").  By agreement of counsel, Plaintiff's response to Defendants' Motion to Dismiss is due by January 20, 2006.

3.      The Court's ruling on Defendants' Motion to Dismiss will greatly affect both the nature of, and the amount of, discovery that will be required in this case.  Rather than engage in expensive and time-consuming discovery that may turn out to be unnecessary, the Defendants are requesting that the Court stay discovery until such time as the Court rules on the Motion to Dismiss.  Once the Court rules on the Motion to Dismiss, the Defendants would request that the Court enter a revised discovery schedule.

4.      Should the Court decline the Defendants' request for a stay of discovery, the Defendants would request a 120-day discovery extension without prejudice to a subsequent extension request.

5.      The Defendants are also requesting a status conference with the Court so that the parties can set forth a detailed plan for discovery.

6.      The Plaintiffs and the Defendants are also jointly requesting that the Court extend the current Pretrial Statement deadline of January 18, 2006 to a date to be determined that is in keeping with the revised discovery schedule.

7.    The Defendants refer the Court to the attached Memorandum of Law.


Respectfully submitted,


January 9, 2006                                   /s/ Alan M. Grochal
                                                 Alan M. Grochal, DC Bar No. 315218
                                                 Stephen M. Goldberg, DC Bar No. 339705
                                                 Tydings & Rosenberg, LLP
                                                 100 East Pratt Street, 26th Floor
                                                 Baltimore, Maryland 21202
                                                 (410) 752-9700



                                                 /s/ Brian Nash
                                                 Brian Nash, Esq., DC Bar No. 230771
                                                 Nash & Associates, LLC
                                                 809 Gleneagles Court, Suite 201
                                                 Towson, Maryland 21286
                                                 (410) 321-6660

                                                 *Counsel for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of January 2006, a copy of the foregoing

motion was served electronically or mailed, first class postage prepaid, to:

Paul S. Caiola, Esquire
David G. Sommer, Esquire
Gallagher Evelius & Jones, LLP
218 N. Charles Street, Suite 400
Baltimore, Maryland  21201
*Attorneys for Plaintiffs*


                                                 /s/ Alan M. Grochal
                                                 Alan M. Grochal

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: PREMIUM ESCROW SERVICES, INC.        * | |
|                * | Case No. 02-2358 |
| Debtor | |
| *   *   *   *   *   *   * | |
| PREMIUM OF AMERICA, LLC    * | Adversary No. 04-10455 |
| Plaintiff            * | |
| v.                      * | |
| WILLIAM C. SANCHEZ, M.D.    * | |
| and                  * | |
| WILLIAM C. SANCHEZ, M.D, P.C.   * | |
| Defendants        * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY DISCOVERY OR, IN THE ALTERNATIVE, TO EXTEND DISCOVERY; REQUEST FOR STATUS CONFERENCE; AND JOINT REQUEST TO EXTEND TIME TO FILE PRETRIAL STATEMENTS

Defendants William C. Sanchez, M.D. and William C. Sanchez, M.D., P.C., by and through their undersigned attorneys, hereby offer this Memorandum of Law in support of their Motion to Stay Discovery or, in the Alternative, to Extend Discovery; Request for Status Conference; and Joint Request to Extend Time to File Pretrial Statements.

### INTRODUCTION

On February 2, 2005, the Plaintiff filed its First Amended Complaint against Dr. Sanchez and his practice group alleging that Dr. Sanchez was negligent in providing life

1

expectancy evaluations in connection with the sale of viaticals. As part of this action, POA is asserting the claims of Beneficial investors who allege to have suffered financial harm as a result of Dr. Sanchez' actions, and who have assigned their individual claims against Dr. Sanchez to POA. For the reasons set forth in this Memorandum, the Defendants are requesting that discovery be stayed in this action pending resolution of the Defendants' recently filed motion to dismiss investor claims. In the alternative, the Defendants are requesting that discovery be extended 120 days without prejudice to future extension requests. The Defendants are also requesting that the Court conduct a status conference. Lastly, the parties are jointly requesting that the Court extend the time to file pretrial statements.

## ARGUMENT

I.  Discovery Should be Stayed Pending the Court's Ruling on Defendants' Motion to Dismiss

On or about December 23, 2005, the Defendants filed a Motion to Dismiss All Investor-Related Claims for Lack of Subject Matter Jurisdiction or, in the Alternative, for Severance of All Investor-Related Claims ("Motion to Dismiss"). Said motion is currently pending before this Court.[1] The gist of Defendants' Motion to Dismiss is that the investor claims being asserted by POA (and which were assigned to POA by the individual investors) should be dismissed for lack of subject matter jurisdiction. The Court's ruling on this motion will greatly affect both the nature of, and the amount of, discovery that will be required in this case.

POA has represented to this Court that there are approximately 4500 individuals who invested in Beneficial viaticals. See Amended Complaint at § 18. At this time, it is

---

[1]  By agreement of counsel, Plaintiff's response to Defendants' Motion to Dismiss is due by January 20, 2006.

not known exactly how many of these individuals had their money assigned to viators who had been evaluated by Dr. Sanchez. Therefore, it is not known exactly how many individual investor claims are being asserted by POA in this case. However, the number is thought to be substantial. POA alleges in its Amended Complaint that Dr. Sanchez performed life expectancy evaluations on approximately 137 viators. See Amended Complaint at § 40. Based on the Defendants' review of documents up to this point, it is believed that each viator had anywhere from four to ten investors associated with him or her. Therefore, it would be reasonable to assume that the number of investors whose funds were used to purchase Dr. Sanchez viators might range anywhere from 548 to 1370. This means there could be well over 1,000 individual investors who may have assigned their claims to POA, and which are now being asserted by POA in this action.

As the Defendants argue in their Motion to Dismiss, these investors are not a certified class. Rather, each individual investor has assigned whatever claim he or she may have had against Dr. Sanchez to POA. POA, therefore, is essentially asserting hundreds and hundreds of individual investor claims against Dr. Sanchez.[2] The Defendants asked POA in interrogatories to identify which specific Beneficial investors relied on Dr. Sanchez prior to investing. Rather than provide specific names of investors, POA referred the Defendants to its several thousand pages worth of business records and stated that "all investors whose money was applied to the purchase of a viaticated policy for which Dr. Sanchez conducted a life expectancy projection relied on that projection in making their investment." (Answer to Interrogatory No. 24 propounded by Defendant William C. Sanchez, M.D.). Therefore, POA is asserting the claim of every single

_____

[2] See Defendants' Motion to Dismiss for a more thorough explanation regarding the assignment of investor claims.

investor whose funds were applied to a Dr. Sanchez viator. Defending these claims, therefore, will require a detailed review of each individual investor's file (as well as the files of the agent(s) who sold the investments), in order to determine when they invested, why they invested, what they were told about the investment, what materials they had reviewed prior to investing, what research they had done prior to investing, what level of knowledge they had of Dr. Sanchez, etc.[3] There is no way to short-circuit this requirement if the Plaintiff is permitted to assert the individual claims of the investors.

The discovery in this case will consist largely of document review, although depositions will be required once the Defendants are able to review the necessary documents in order to determine who may need to be deposed. In Answers to Interrogatories and Response to Request for Production of Documents, POA repeatedly referred the Defendants to the thousands of pages of documents in its possession.[4] POA apparently delivered to Plaintiff's counsel a multitude of boxes containing documents associated with Beneficial. Undersigned counsel was advised that there may be approximately fifty boxes that might relate to Dr. Sanchez.

On or about October 28, 2005, undersigned counsel's office began review of the documents being held at the law offices of Plaintiff's counsel. Defense counsel assigned numerous individuals to the task of document review (usually three or four individuals at a time) several days per week for approximately three weeks. One paralegal alone spent

---

[3] In terms of causation and damages, the Defendants will also have to examine how much money each investor contributed, the date of the investment, the expected date of return, the amount of expected return, whether he or she ever received any return on the investment, whether he or she ever withdrew from the investment, etc. This will have to be done on each and every investor file if the Defendants are to get an accurate picture of the damages in this case.

[4] For example, in response to the Interrogatories propounded by Dr. Sanchez, POA stated in thirteen different Answers that the Defendants could review the documents in POA's possession for the requested information.

approximately 54 hours doing document review.  Despite the good-faith efforts of defense counsel to review these documents in a timely fashion, there are still thousands of pages of documents that have not been reviewed because of the sheer volume of materials.

The documents in POA's possession fill scores of boxes and number in the many thousands of pages.  Furthermore, although POA has apparently made an attempt to organize the boxes by category (e.g., Investor Files, Agent Files, etc.), there are numerous boxes in each category, and within each box can be scores of individual manila folders each containing many pages of relevant information.  The breakdown of records is basically as follows.

POA has approximately thirty boxes labeled Investor Files.  Within each box are scores of individual manila folders, each one corresponding to an individual investor.  As noted above, POA has indicated there are 4500 investors who invested in Beneficial.  It is the Defendants' understanding that each of these investors has his or her own folder in these boxes of Investor Files.  These folders are arranged in approximate alphabetical order, although this is by no means true in all cases.  Notably, they are not arranged by the doctor who did the life expectancy evaluation of the individual viators.  In other words, there are no boxes that just contain investors whose funds were allocated to Dr. Sanchez viators.  Therefore, in order to examine the files of investors who invested in Dr. Sanchez viators, the Defendants need to determine from other documents the names of those individuals and then search the Investor Files boxes to find each specific folder. Each investor folder may contain any number of pages.  Some folders are quite thin,

consisting of a handful of pages. Some folders are substantially thicker and contain numerous pages.

In addition to the Investor Files, POA also has approximately ten boxes labeled Agent Files. For the purposes of this case, agents were those individuals – primarily investment advisors or brokers – who actually met with the investors and sold them on the idea of investing in Beneficial viaticals. As is the case with the Investor Files, the boxes of Agent Files each contain multiple manila folders corresponding to individual agents. Oftentimes, there are multiple folders for one agent because that agent would have sold investments to more than one investor. The Agent Files are also arranged alphabetically (roughly speaking), but there is no listing setting forth which agents specifically sold to investors whose funds were allocated to Dr. Sanchez viators. Therefore, in order to find agents who may be connected to this case, the Defendants have to first determine which investors may have invested in a specific viator, then pull each investor's file to determine which agent originally dealt with that investor, and then go to the Agent Files and locate that specific agent's file. Each specific agent folder can contain a substantial number of pages, including purchase agreements, marketing material, letters to and from the investors, copies of news articles related to HIV treatment, etc. POA has indicated that there were more than 700 agents involved in this investment scenario.

In addition to the Investor Files and Agent Files, there are approximately ten to fifteen boxes labeled Disputed Files. Each box appears to contain numerous individual investor files. The Defendants do not know why these files are considered to be disputed, nor why they have been separated from the rest of the investor files. Furthermore, the

Defendants do not know at this time how many of the investors in the Disputed Files are related to Dr. Sanchez.

In addition to the above-referenced documents, Plaintiff's counsel is also in possession of numerous boxes of documents that have been represented to be files related to POA's ongoing case in this Court against George Kindness, M.D. and his practice group. Plaintiff's counsel has indicated that these files do not relate to POA's case against Dr. Sanchez, so the Defendants have not reviewed any of these files as of this time. However, these files may need to be reviewed in the future because they may contain documents showing overlapping investors, viators, agents, and marketing materials.

Given the sheer number of documents that exist in this case, discovery is going to be an extremely time-consuming and expensive process. Not only is the document portion of discovery going to be extensive, but there may be numerous individuals who will have to be deposed.[5] However, the bulk of this discovery is related to the hundreds and hundreds of individual investor claims that are being asserted in this case. If these investor claims remain viable, the Defendants have no choice but to proceed with this document review. However, should these investor claims be dismissed, a substantial portion of this discovery could be avoided. Rather than expend the additional time and expense on discovery that may not be needed, the Defendants contend that it would be more reasonable for the parties to hold off on conducting further discovery until such time as the Court rules on Defendants' Motion to Dismiss. If Court rules that the investor claims remain viable in this case, the Defendants would ask for a revised scheduling

---

[5] POA has identified in Answers to Interrogatories approximately thirty individuals with personal knowledge and/or discoverable information in this case. Furthermore, if the individual investor claims remain viable, the Defendants would need to consider deposing each individual investor.

order that takes into account the magnitude and the complexity of the discovery in this case.

Should the Court decline staying discovery, the Defendants request, in the alternative, that discovery be extended by 120 days without prejudice to subsequent extension requests. Although the Defendants have attempted in good faith to undertake document review, it is clear that the magnitude of discovery in this case will require additional time. Plaintiff will not suffer any prejudice by extending discovery, and no trial date has been set at this time.

II.    The Defendants Request a Status Conference with the Court

Given the size and scope of this case, the Defendants request that the Court hold a status conference so that the parties can set out for the Court exactly what this case entails and what discovery will be required. The Defendants would suggest that this is a more productive method of proceeding at this time rather than simply asking the Court for piece-meal extensions for discovery. Undersigned counsel sought the consent of Plaintiff's counsel as to this request, but was advised that Plaintiff would not consent to a status conference.

III.    Pretrial Statements are Premature at this Time

The originally Scheduling Order in this case provided that pretrial statements were due by January 18, 2006. This was predicated on a close of discovery date of October 20, 2005 and a dispositive motions deadline of November 11, 2005. Since the date of this original Scheduling Order, the parties have obtained two extensions of the discovery deadlines. However, the date for filing pretrial statements has not been

modified. The parties are in agreement that pretrial statements are premature at this time because discovery is still open and because dispositive motions are currently pending before this Court. The parties, therefore, jointly request that the Court extend the time to file pretrial statements.

## CONCLUSION

For the foregoing reasons, the Defendants request that discovery be stayed in this matter until such time as the Court rules on Defendants' Motion to Dismiss or, in the alternative, to extend discovery by 120 days without prejudice to subsequent extension requests. The Defendants also request that the Court conduct a status conference. Lastly, the parties jointly request that the Court extend the time for the parties to file pretrial statements.

Respectfully Submitted,

January 9, 2006

/s/ Alan M. Grochal
Alan M. Grochal, DC Bar No. 315218
Stephen M. Goldberg, DC Bar No. 339705
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
(410) 752-9700


/s/ Brian Nash
Brian Nash, Esq., DC Bar No. 230771
Nash & Associates, LLC
809 Gleneagles Court, Suite 201
Towson, Maryland 21286
(410) 321-6660

*Counsel for Defendants*