IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: PREMIUM ESCROW
SERVICES, INC., DEBTOR                          *

\*     \*     \*     \*     \*     \*          *

PREMIUM OF AMERICA, LLC,                        *

    Plaintiff                                *

       v.                                  *

William C. Sanchez, M.D.                         *          CASE NO. 02-2358
                                                            CHAPTER 11
    and                                      *          Adv. Proc. No.: 04-10455

William C. Sanchez, M.D., P.C.                   *

    Defendants                               *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PLAINTIFF'S OPPOSITION
## TO DEFENDANTS' MOTION TO STAY DISCOVERY

Plaintiff Premium of America, LLC ("POA"), through counsel, Paul S. Caiola, David G. Sommer, and Gallagher Evelius & Jones LLP, hereby opposes Defendants' Motion To Stay Discovery Or, In The Alternative, To Extend Discovery; Request For Status Conference; and Joint Request To Extend Time To File Pre-Trial Statements (the "Motion to Stay").

## INTRODUCTION

Defendants seek to delay this proceeding and prolong discovery after the court-ordered discovery deadline has passed. This request should be rejected, since

# 293440 v2 DGS
012053-0002



Defendants, due to their own lack of diligence in conducting discovery, cannot establish the requisite "good cause" to justify an extension. Moreover, as described below, a discovery extension is inappropriate since it would cause POA significant prejudice. Finally, discovery should not be stayed pending this Court's resolution of the pending motion to dismiss because that motion, even if successful, would not dispose of all claims filed by POA.

## BACKGROUND

Defendants received notice of Plaintiff's claims when they were served with the First Amended Complaint (the "Amended Complaint") on February 2, 2005. In the Amended Complaint, POA alleged that Premium Escrow Services, Inc. ("PES") and certain individual investors suffered damages as a result of negligent life expectancy evaluations performed by Defendants in connection with the sale of viaticated life insurance policies.

After Defendants filed their Answer and the parties submitted a proposed discovery schedule, this Court, on May 24, 2005, entered an Order adopting the parties' proposed deadlines. The initial discovery schedule set a discovery deadline of October 20, 2005.

Defendants waited idly for two months before serving discovery requests in July of 2005. At that time, Defendants served two sets of Interrogatories, a request for production of documents, and two sets of requests for admissions. Collectively, Defendants requested 584 admissions, 56 requests for production of documents, and 49 interrogatories. In August of 2005, POA duly responded to all of Defendants' discovery

requests and made available for inspection several thousand pages of documents that were responsive to Defendants' requests.

The parties extended discovery by 30 days in August of 2005, and later extended discovery by an additional 60 days. After considering the parties' most recent consent motion to extend discovery, the Court entered an Order establishing a January 20, 2006 discovery deadline.

From the date POA made the documents available through the discovery deadline (i.e., January 20, 2006), Defendants had approximately five months to review documents and conduct additional discovery. However, instead of proceeding diligently and devoting the necessary time and resources to complete discovery within the deadlines set by the Scheduling Order, Defendants opted to review POA's documents at their leisure and allow the discovery schedule to run its course. Defendants did not begin to review documents until late October, two months after the documents were made available. And when they finally inspected the documents, Defendants did so sporadically over the course of approximately one month.[1] Since this initial period of review, Defendants have not returned to review additional documents and have sought no further discovery. Indeed, Defendants never noted or took a single deposition during the ten-month discovery period.

On December 23, 2005, just four weeks before the discovery deadline, Defendants filed a non-dispositive Motion to Dismiss Investor-Related Claims for Lack of Subject

---

[1] During this review, Defendants tabbed hundreds or thousands of pages, which they copied and now possess.

Matter Jurisdiction or, in the Alternative, for Severance of All Investor-Related Claims
(the "Motion to Dismiss"). In the Motion to Dismiss, Defendants allege without support
that the investors' claims were obtained through collusive assignments. Based on this
baseless claim, Defendants assert that POA lacks standing to assert investor claims and
that this Court lacks subject matter jurisdiction over these claims.[2] Of course, these
arguments, which purport to be based on the allegations in the Amended Complaint,
could have been made many months ago at the inception of this action. Further, the
Motion to Dismiss seeks to dismiss only "investor-related claims." Defendants expressly
have not requested dismissal of the claims asserted by POA on behalf of its predecessor
in interest, PES. Thus, even if successful, the motion would not dispose of the entire
case.

On January 9, 2006, eleven days before the discovery deadline, Defendants filed
the pending motion seeking to extend or stay the discovery period. Even this motion was
untimely filed, as POA's original response date (January 23, 2006) fell three days after
expiration of the discovery period.

## ARGUMENT

### A.    Defendants' Cannot Establish Good Cause To
### Modify The Scheduling Order And Cannot Show

---

[2]    In response to this motion, POA attached an affidavit from the attorney who advised
the Official Committee of Unsecured Creditors of PES in proposing the plan for
reorganization that was ultimately approved by this Court, as well as several documents
that were drafted and published prior to the date the assignments were made. These
documents clearly establish that the investors' assignments were made for a valid
business purpose and were not collusive in any way. Defendants claims to the contrary
are meritless and border on frivolous.

**That POA Would Not Be Prejudiced By Extension**
**Of The Discovery Deadline.**

Defendants claim that the existing deadlines could not reasonably be met because the documents produced by POA were voluminous and required a careful reading. Memorandum in Support of Motion to Stay ("Defendants' Memorandum") at 8. But this description is belied by Defendants' actions. As described above, during the ten-month discovery period in this action, Defendants had ample time to complete discovery but failed to exercise diligence in conducting discovery. Rather, Defendants exhibited a careless disregard for this Court's discovery schedule. Thus, while Defendants claim to seek relief from the voluminous documents in this case, what Defendants actually seek is relief from their own carelessness and lack of diligence in conducting discovery. This Court should not oblige this request. Under the standards applicable in this district, Defendants' lack of diligence should not be excused or rewarded through a modification of the Scheduling Order. Accordingly, the Motion to Stay should be denied.

Fed. R. Civ. P. 16(b) ("Rule 16(b)"), which applies to adversary proceedings by virtue of Bankruptcy Rule 7016, provides that a court's scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." In *DAG Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104-06 (D.D.C. 2005), the District Court recently considered and rejected a request to extend the discovery deadline. The *DAG* court discussed the importance of the court's scheduling order:

> A Scheduling Order is intended to serve as the unalterable
> road map (absent good cause) for the remainder of the case.
> A scheduling order is not a frivolous piece of paper, idly
> entered, which can be cavalierly disregarded by counsel

> without peril.    Indeed, disregard of the order would
> undermine the court's ability to control its docket, disrupt the
> agreed-upon course of litigation, and reward the indolent and
> the cavalier.

*Id.* at 104 (internal quotations and citations omitted). The court set forth the standards to

be applied under Rule 16(b) and stressed that a party's lack of diligence does not

constitute good cause:

> Rule 16(b)'s 'good cause' standard primarily considers the
> diligence of the party seeking the amendment. The district
> court may modify the pretrial schedule if it cannot reasonably
> be met despite the diligence of the party seeking the
> extension. Importantly, carelessness is not compatible with a
> finding of diligence and offers no reason to grant relief.
> Mere failure on the part of counsel to proceed promptly with
> the normal processes of discovery and trial preparation should
> not be considered good cause. In sum, although the existence
> or degree of prejudice to the party opposing the modification
> might supply additional reasons to deny a motion, the focus of
> the inquiry is upon the moving party's reasons for seeking
> modification. If that party is not diligent, the inquiry should
> end.

*Id.* at 105 (internal quotations and citations omitted) (emphasis added).

Moreover, when analyzing whether the movant has demonstrated good cause,

courts consider whether matters that "could not have been reasonably foreseen or

anticipated" interfered with the movant's ability to meet the discovery deadline,

notwithstanding the party's diligent efforts. *Id.* at 106. In other words, if the party

seeking an extension to the discovery schedule had notice "that a line of inquiry is

reasonably obvious and important," the party is expected to use diligence to "conduct

discovery to flesh out the issue and bolster its case within the binding timeframe." *Id.*

6

Here, Defendants had more than ample time to complete discovery, including a thorough review of the documents at issue and any follow-up discovery necessitated by the document review. Defendants answered the Amended Complaint on March 1, 2005, and the discovery schedule did not expire until January 20, 2005, more than 10 months later. After the Court entered the initial scheduling order, Defendants allowed months to pass without seeking discovery from POA. When they finally requested discovery in July of 2005, POA responded diligently and, in August of 2005, made its documents available for review. Defendants did not begin to review the documents until more than two months after they were made available. When Defendants finally began to review the documents in October of 2005, they did so sporadically over the course of several weeks. Thereafter, Defendants conducted no additional discovery.

Moreover, Defendants became aware that POA possessed thousands of pages of documents even before the discovery period began, when POA's counsel advised Defendants' counsel during the parties' initial discovery conference that POA possessed many boxes of documents that were relevant to the sale and administration of the viatical policies. Despite learning early in the case that an extensive document review would be necessary, Defendants did not schedule its discovery efforts to meet the Court's binding discovery schedule. Rather, they procrastinated for months and then only spent portions of several weeks reviewing documents.

In the Motion to Stay, Defendants embellish this sporadic document review, but they fail to mention that they have made no effort to continue to review documents since their document review in October and November of last year, even though they knew

discovery would close on January 20, 2006. Defendants have moved to extend discovery in this proceeding to avoid the consequences of their lack of diligence and careless disregard for the Court's Scheduling Order. Accordingly, Defendants have failed to show good cause for modifying the Scheduling Order.

Defendants' patent lack of diligence alone should preclude an extension of the discovery schedule, but such an extension also should be denied because it would cause prejudice to POA, which cannot survive protracted litigation. POA has limited assets and cannot sustain itself in perpetuity. Affidavit of Robert Del Collo ("Del Collo Affidavit"), attached as Exhibit 1, at ¶ 2. It exists for the purpose of administering a limited number of viaticated life insurances policies owned by PES (the "Viatical Policies") and maximizing distributions to its members. *Id*. at ¶ 3.

POA has two types of meaningful assets: (1) the Viatical Policies; and (2) litigation against the various individuals and entities involved in the sale, marketing, and administration of those policies prior to PES's bankruptcy. *Id*. at ¶ 4. POA's principal source of revenue comes from maturing Viatical Policies. POA uses this revenue to fund the premiums of other Viatical Policies that have not yet matured. *Id*. In 2005, POA paid an average of $465,000 per month to fund the premiums on the Viatical Policies it owns. *Id*. The annual amount of premiums paid will increase over time, as viators age and the cash value of certain policies, which has been applied to date to reduce premiums payments, is depleted. *Id*.

As of the present date, POA estimates that its ability to fund policy premiums will end on January 30, 2007. *Id*. at ¶5. Unless it receives additional revenues from a

judgment or settlement of litigation, or from maturing Viatical Policies, POA will thereafter continue its existence only by selling policies. *Id.* Under pressure to keep afloat, POA might not get a good price for its policies. Further, if it cannot find a willing buyer for the policies, POA could be forced to let certain policies lapse.[3] *Id.*

Given POA's heavy financial burden, the uncertainty of the revenue from the Viatical Policies, and the limited duration of POA's existence, this litigation must proceed with minimal interruption. Any unnecessary extensions, such as the one requested here by Defendants, will delay any recovery of litigation proceeds and may force POA to sell assets just to outlast the litigation. Accordingly, any stay of discovery or extension to the Court's schedule will cause prejudice to POA.

In sum, Defendants have demonstrated a lack of diligence in their discovery efforts, and cannot establish "good cause" for extending the discovery deadline. They were unable to complete a document review to their satisfaction because they waited until the eleventh hour to begin and, even then, made only a half-hearted effort to complete discovery. In light of Defendants' lack of diligence and the prejudicial effect on POA, the Motion to Stay should be denied.

---

[3] The policies for which defendants' provided life expectancy evaluations provide a good example of this phenomenon. The viators whom Defendants evaluated (all of whom have HIV) are now projected to live normal healthy lives rather than only one to four years as Dr. Sanchez projected. Del Collo Affidavit, Exhibit 1, at ¶ 6. For this reason, POA has discontinued premium payments on these policies and will allow them to lapse. Prior to making the decision to allow these policies to lapse, POA tried in vain to identify a purchaser for the polices. *Id.*

> **B.    A Stay of Discovery Is Inappropriate Because Defendants' Motion To Dismiss Would Not Dispose Of The Entire Proceeding.**

Defendants seek to stay discovery pending the outcome of the Motion to Dismiss. Defendants' Memorandum at 7-8.  However, a stay of discovery should not be granted where, as here, it has been filed based on the existence of a non-dispositive motion to dismiss.  *See Chavous v. District of Columbia Fin. Responsibility & Mgt. Assistance Auth.*, 201 F.R.D. 1, 3 (D.D.C. 2001) ("[A] stay of discovery pending determination of a motion to dismiss 'is rarely appropriate when the pending motion will not dispose of the entire case . . . .'").

Defendants' Motion to Dismiss seeks to dispose of only the "investor-related claims" that POA has asserted.  In addition to these claims, POA seeks redress for damages asserted on behalf of PES.  Amended Complaint ¶s 47, 57, 64.  Indeed, Defendants acknowledge that their Motion to Dismiss is not dispositive.  *See, e.g.*, Defendants' Memorandum at 2 (noting a distinction between "investor-related claims" and other claims that would survive in the event the "investor-related claims" are dismissed).  Because the Motion to Dismiss is not dispositive, a stay is inappropriate.

Indeed, a stay is particularly inappropriate here, since the Motion to Stay was not even filed until eleven days before the discovery period expired.  Under these circumstances, Defendants' claim that resources will be wasted if they are forced to continue with discovery rings hollow.

# 293440 v2 DGS
012053-0002

10

## CONCLUSION

For the foregoing reasons, POA respectfully requests that this Court deny the

Motion to Stay.[4]

Respectfully submitted,

Dated:  January 30, 2006

_____/s/  David G. Sommer_____
Paul S. Caiola, Federal Bar #23940
David G. Sommer, Federal Bar #27581
Gallagher Evelius & Jones LLP
218 N. Charles Street, Suite 400
Baltimore, Maryland 21201
(410) 727-7702

Attorneys for Plaintiff Premium of
America, LLC

---

[4] Defendants request a status conference with the Court to "set out for the Court what this case entails and what discovery will be required." Defendants' Memorandum at 8. No status conference is necessary at this time, however, because the discovery period has expired and the Amended Complaint, for present purposes, provides a sufficient explanation of the nature of this proceeding and POA's claims.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: PREMIUM ESCROW
SERVICES, INC., DEBTOR                    *

\*      \*      \*      \*      \*      \*      *

PREMIUM OF AMERICA, LLC,                  *

      Plaintiff                      *

          v.                    *
                         CASE NO. 02-2358
William C. Sanchez, M.D.                   *     CHAPTER 11

     and                         *     Adv. Proc. No.: 04-10455

William C. Sanchez, M.D., P.C.            *

      Defendants                    *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### AFFIDAVIT OF ROBERT DEL COLLO

     I, Robert Del Collo, being over the age of 21 years, have personal knowledge of, and am competent to testify to, the matters set forth herein. I hereby certify as follows:

     1.     I am a member of the of Board of Managers of Premium of America, LLC ("POA"). I have served in this position since the creation of POA pursuant to the confirmation of the First Amended Plan of Reorganization in the above-referenced bankruptcy case.

     2.     POA has limited assets and cannot sustain itself in perpetuity.

# 293576 DGS
012053-0002

3.    POA exists for the purpose of administering a limited number of viaticated life insurance policies owned by Premium Escrow Services, Inc. (the "Viatical Policies") and maximizing distributions to its members.

4.    POA has two types of meaningful assets:  (1) the Viatical Policies; and (2) litigation against the various individuals and entities involved in the sale, marketing, and administration of those policies prior to the bankruptcy of Premium Escrow Services, Inc. POA's principal source of revenue comes from maturing Viatical Policies.  POA uses this revenue to fund the premiums of other Viatical Policies that have not yet matured.  In 2005, POA paid an average of $465,000 per month to fund the premiums on the Viatical Policies it owns.  The annual amount of premiums paid will increase over time, as viators age and the cash value of certain policies, which has been applied to date to reduce premiums payments, is depleted.

5.    As of the present date, POA estimates that its ability to fund policy premiums will end on January 30, 2007.  Unless it receives additional revenues from a judgment or settlement of litigation, or from maturing Viatical Policies, POA will thereafter continue its existence only by selling policies.  Under pressure to keep afloat, POA might not get a good price for its policies.  Further, if it cannot find a willing buyer for the policies, POA could be forced to let certain policies lapse.

6.    The viators whom William C. Sanchez, M.D. and William C. Sanchez, M.D., P.C., evaluated (all of whom have HIV) are now projected to live normal healthy lives rather than only one to four years as Dr. Sanchez projected.  For this reason, POA has discontinued premium payments on these policies and will allow them to lapse.  Prior

2

to making the decision to allow these policies to lapse, POA tried in vain to identify a purchaser for the polices.

[SIGNATURE PAGE TO FOLLOW]

I solemnly affirm under the penalties of perjury that the contents of the foregoing affidavit are true and correct to the best of my knowledge, information, and belief.

1/30/2006
Date

Robert Del Collo

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on the 30th day of January, 2006, service of the foregoing Plaintiff's Opposition to Defendants' Motion to Stay Discovery was made by electronic service upon the following parties:

> Brian J. Nash, Esq.
> Michael Sanders, Esq.
> Nash & Associates, LLC
> Cromwell Center, Suite 201
> 809 Gleneagles Court
> Towson, Maryland 21286
> (410) 321-6660

> Alan M. Grochal, Esq.
> Stephen M. Goldberg, Esq.
> Tydings & Rosenberg, LLP
> 100 East Pratt Street, 26th Floor
> Baltimore, Maryland 21202
> (410) 752-9700

                    /s/
David G. Sommer

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE: PREMIUM ESCROW
SERVICES, INC., DEBTOR                    *

\*     \*     \*     \*     \*     \*          *

PREMIUM OF AMERICA, LLC,                  *

    Plaintiff                         *

       v.                          *
                           CASE NO. 02-2358
William C. Sanchez, M.D.                  *    CHAPTER 11

    and                               *    Adv. Proc. No.: 04-10455

William C. Sanchez, M.D., P.C.            *

    Defendants                        *

  \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## ORDER DENYING DEFENDANTS' MOTION TO STAY DISCOVERY

Having read and considered Defendants' Motion To Stay Discovery Or, In The Alternative, To Extend Discovery; Request For Status Conference; and Joint Request To Extend Time To File Pre-Trial Statements (the "Motion To Stay"), Plaintiff's Response in Opposition to Defendants' Motion To Stay Discovery, and any reply memoranda filed by the parties, it is hereby **ORDERED** by the United States Bankruptcy Court for the District of Columbia that the Motion To Stay be, and the same hereby is, **DENIED**.

cc:    Paul S. Caiola, Esquire
       David G. Sommer, Esquire
       Gallagher Evelius & Jones LLP
       The Park Charles, Suite 400
       218 N. Charles Street
       Baltimore, MD 21201

       Brian J. Nash
       Michael Sanders
       Nash & Associates, LLC
       Cromwell Center, Suite 201
       809 Gleneagles Court
       Towson, Maryland 21286

       Alan M. Grochal
       Stephen M. Goldberg
       Tydings & Rosenberg, LLP
       100 East Pratt Street, 26th Floor
       Baltimore, Maryland 21202

## END OF ORDER