IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PREMIUM OF AMERICA, LLC** | * | |
| Plaintiff, | * | |
| v. | * | |
| **WILLIAM C. SANCHEZ, M.D.** | * | Case No. 1:06-cv-01325-RJL |
| and | * | |
| **WILLIAM C. SANCHEZ, M.D., P.C.,** | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff seeks to assert three counts, sounding in negligence, against Defendants William C. Sanchez, M.D. and William C. Sanchez, M.D., P.C. ("Defendants"), based upon claims allegedly assigned to it by Premium Escrow Services, Inc., the "Beneficial entities," and Beneficial's investors. Plaintiff's claims should be dismissed in their entirety because the they are barred by the applicable statute of limitations and/or the doctrine of *res judicata*, or are improperly asserted by plaintiff.

**I.   BACKGROUND.**

On December 9, 2002, Premium Escrow Services, Inc. (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (Second Amended Complaint ¶ 21.) The Debtor continued to operate its business as a debtor-in-possession until August 12, 2003, when United States Bankruptcy Court for the District of the District of Columbia (the "Bankruptcy

#585887v.1

Court") confirmed its First Amended Plan of Reorganization, as revised (the "Plan"). (Second Amended Complaint ¶ 1.)

On November 19, 2004, Premium of America, LLC ("POA"), commenced Adversary Proceeding No. 04-10455 in the Bankruptcy Court. The First Amended Complaint was filed in the Bankruptcy Court on February 2, 2005. The Bankruptcy Court dismissed a substantial portion of the claims asserted by POA on May 23, 2006 (the "Dismissal Order"). No appeal was taken from the Dismissal Order. POA filed a Motion to Vacate Order Dismissing Investor-Related Claims which the Bankruptcy Court denied on June 13, 2006. This Court then withdrew the reference to the Bankruptcy Court on July 27, 2006. POA filed a Motion for Leave to File a Motion for Leave to Amend Pursuant to 28 U.S.C. § 1653, which this Court granted on September 19, 2006. On November 21, 2006, POA's Second Amended Complaint was uploaded to the Court's docket.

The substantive gravamen of the action are three state law claims that Defendants were negligent by providing inaccurate life expectancy projections on which PES and certain investors allegedly relied in deciding whether to purchase life insurance policies from terminally ill patients. For the reasons set forth below, the claims asserted by plaintiff must be dismissed in their entirety. The allegations asserted on behalf of the investors are either untimely or barred by *res judicata*, and constitute an improper attempt to bring a class action without meeting the requirements of Federal Rule of Civil Procedure 23. The claims against Defendant asserted on behalf of PES and Beneficial must be dismissed because POA has not alleged facts sufficient to demonstrate that it has standing to assert such claims.

## II.    STANDARD FOR GRANTING MOTION TO DISMISS.

The District Court has set forth the circumstances upon which a Motion to Dismiss may be granted:

> In deciding a motion to dismiss, the court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs." *Fitts v. Fannie Mae*, 44 F. Supp. 2d 317, 321 (D.D.C.1999). However, because the inquiry focuses on the Court's power to hear the claim, the Court may give plaintiffs' factual allegations closer scrutiny and may consider materials outside the pleadings. *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp.2d 9, 13 (D.D.C.2001); *Herbert v. National Academy of Sciences*, 297 U.S. App. D.C. 406, 974 F.2d 192, 197 (D.C.Cir.1992).

*McGuirl v. United States*, 360 F. Supp. 2d 125, 127-28 (D.D.C. 2004).  *See also Washington Bancorporation v. Federal Deposit Ins. Corp. (In re Washington Bancorporation)*, Bankr. Case No. 90-00597, Case No. 95-1340, 1996 U.S. Dist. LEXIS 3876, *28-*29 (D.D.C. Mar. 19, 1996); *Nisselson v. Lernout*, Case No. 03-10843-PBS, 2004 U.S. Dist. LEXIS, *8-*9 (D.Mass. Aug. 9, 2004).

A motion to dismiss is "intended to test the legal sufficiency of the complaint." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040, 358 U.S.App.D.C. 295 (D.C. Cir. 2003) (quoted in *Alberts v. Tuft (In re Greater Southeast Community Hospital Corp.*), No. 04-10459, 2005 Bankr. LEXIS 2186, *10 (Bankr. D.D.C. Oct. 31, 2005)).  And, when a complaint "fail[s] to state a claim upon which relief can be granted," dismissal is appropriate.  Fed. Bankr. Rule 7012.

Standing is a "fundamental component of the court's subject matter jurisdiction." *Guttman v. Martin (In re Railworks Corp.)*, 325 B.R. 709, 715 (Bankr. D.Md. 2005).  A claim that the plaintiff lacks standing is appropriately asserted in a Motion to Dismiss.  *Id.*

## III.   ARGUMENT.

Plaintiff's Second Amended Complaint must be dismissed in its entirety because it fails to state any claim upon which relief could be granted.  Claims brought by plaintiff as assigned by the viatical investors and asserted on behalf of the Beneficial entities are barred by the applicable statute of limitations and/or *res judicata*.  Plaintiff has not demonstrated that it has standing to bring claims on behalf of PES.

### A.   Plaintiff's Second Amended Complaint Fails To State a Claim Upon Which Relief Can Be Granted.

Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted for a number of reasons.  First, claims assigned by the viatical investors and asserted on behalf of the Beneficial entities have been dismissed – plaintiff sought leave to amend, and did amend, its jurisdictional allegations but also improperly purported to amend these claims back into this litigation.  Second, in the alternative, the Second Amended Complaint contains no allegations which would permit it to bring claims on behalf of the "Beneficial" entities, as that term is defined in the Second Amended Complaint.  Similarly, POA's Second Amended Complaint contains no facts which would give rise to a duty of care owed to PES by Defendants.  The Second Amended Complaint must therefore be dismissed in its entirety.  To the extent it is not, Counts 1 and 3 must be dismissed because they seek relief only for a non-party.

### 1. Plaintiff's Second Amended Complaint Does Not Contain Any Allegations That Would Permit it to Bring Claims on Behalf of the Entities Defined as "Beneficial," Who Are Not Parties to This Proceeding.

Factually, plaintiff has not made any allegations in its Second Amended Complaint which would permit it to bring claims on behalf of, or derived from, the entities defined as "Beneficial."[1]

In November 2002, the Beneficial entities, including Beneficial Services Corp., Beneficial Funding Corp., and Beneficial Financial Services, Inc. filed voluntary petitions for relief under various chapters of the Bankruptcy Court. (Second Amended Complaint ¶ 20.) PES filed for relief approximately three weeks later. (Second Amended Complaint ¶ 21.) Although the bankruptcies were consolidated procedurally and administered jointly, plaintiff has not alleged a substantive consolidation. (Second Amended Complaint ¶ 22.) Indeed, plaintiff is quite clear that it was created as part of the PES plan of reorganization. (Second Amended Complaint ¶ 23.) The Second Amended Complaint describes no relationship between plaintiff and the Beneficial entities arising from plaintiff's creation in the PES bankruptcy.

Further, plaintiff has not alleged that the Beneficial entities have assigned their claims to it. In fact, plaintiff quite clearly states that only PES and the "Beneficial investors" have assigned their claims to it. (*See, e.g.,* Second Amended Complaint ¶¶ 24, 25, 54, 64, 71.) To the extent plaintiff seeks to assert claims held by or derived from Beneficial, the Second Amended Complaint states no grounds upon which it can do so and the claims must be dismissed.

---

[1] According to Paragraph 14, "In this Complaint, Thompson Business Products, Imtek Funding Corporation, and Beneficial Assurance, Ltd., as well as affiliates of Beneficial Assurance, Ltd., including without limitation Beneficial Financial Services, Inc., Beneficial Funding Corp., Beneficial Services Corp., BA Titling Trust 1, Atlantic Marketing, and Beneficial Assurance, Inc., will sometimes hereinafter collectively be referred to as "Beneficial."

> *i.  If Plaintiff is Permitted to Assert Claims on Behalf of the Beneficial Entities, Diversity Jurisdiction Does Not Exist as Beneficial Funding Corporation Was a District of Columbia Citizen.*

To the extent plaintiff is permitted to assert claims on behalf of Beneficial, the citizenship of each of the Beneficial entities should be considered. *Wright v. Herman*, 230 F.R.D. 1, 6 (D.D.C. 2005). Beneficial Funding Corporation was incorporated in the District of Columbia in 2002. Although the charter has since been revoked, there is no evidence in the Second Amended Complaint that this occurred prior to the date of filing. As a result, complete diversity does not exist. Because each of Counts 1, 2, and 3 seeks to recover on behalf of alleged harm to Beneficial, the Complaint msut be dismissed in its entirety. (*See, e.g.,* Second Amended Complaint ¶¶ 51, 52, 53, 58, 59, 60, 61, 62, 63, 66, 67.)

If plaintiff is permitted to assert claims on behalf of the Beneficial entities because of an alleged assignment from those entities, that assignment was a collusive effort to manufacture jurisdiction. Such manufacture of federal jurisdiction is prohibited by 28 U.S.C. § 1359. 28 U.S.C. § 1359 provides, in relevant part:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

In interpreting the section, the Supreme Court stated:

> If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties. Such 'manufacture of Federal jurisdiction' was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors.

*Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828-29, 89 S.Ct. 1487 (1969). *See also Design for Business Interiors, Inc. v. Herson's, Inc.*, 659 F. Supp. 1103, 1109 (D.D.C. 1986) ("Where, as

here the assignment is merely colorable, with no substance underlying it, and results in diversity jurisdiction, § 1359 applies and bars this court from hearing plaintiff's case. The court should not, solely on the strength of plaintiff's denial of improper intent, take jurisdiction of a case which but for a sham assignment would be in the state court system."); *Edlow Internat'l Co. v. Nuklearna Elecktrarna Krsko*, 441 F. Supp. 827, 830 (D.D.C. 1977); *In re Maislin Industries, U.S., Inc.*, 66 B.R. 614, 617 (E.D. Mich. 1986) ("Certainly, the policy behind the statute is to prevent the manufacture of federal jurisdiction through assignment.").

The Supreme Court reviewed the totality of the circumstances surrounding the assignments before determining that they were collusive and violated 28 U.S.C. § 1359. *Kramer, supra*, 394 U.S. at 823, 827-28, 89 S. Ct. 1487 (assignment of claims for $1 with 95% of proceeds to be awarded to assignor); *Balzotti v. RAD Investments, Inc.*, 273 B.R. 327, 331 (D.N.H. 2002) (assignment was not in violation of 28 U.S.C. § 1359 where plaintiff demonstrated it had been made in exchange for "valuable" timing concessions during bankruptcy proceedings); *In re Maislin*, *supra*, 66 B.R. at 616 (assignment from secured creditor to debtor in violation of 28 U.S.C. § 1359 where admittedly made after bankruptcy court proposed to dismiss claims for lack of jurisdiction); Feinberg *v. Katz*, 2005 U.S. Dist. 26954, *35-*36 (S.D.N.Y. Nov. 3, 2005).

In *In re Maislin*, *supra*, the court found 28 U.S.C. § 1359 applicable in proceedings in the bankruptcy courts. 66 B.R. at 617. Although this Court has not directly reached the issue, other courts have considered the effect of an assignment that confers jurisdiction specifically upon the bankruptcy court:

> [A] court must carefully examine any post-petition assignment and the circumstances surrounding its issuance to determine whether the assignment will have a sufficient impact on the estate to bring the case within the scope of the court's "related to" jurisdiction

>and, if so, whether the assignment nevertheless violates 28 U.S.C.
>§ 1359, the collusive joinder statute.

*Balzotti, supra*, 273 B.R. at 331.

Plaintiff asks this Court to render a decision with respect to its allegations that the Defendants were negligent in their projections of the viators' life expectancies. The Beneficial debtors' alleged assignments manufacture jurisdiction in this Court. Each of the three counts asserted against Defendants is based in substantive state law – they present ordinary tort claims that could not have been collectively asserted in this Court unless they became property of POA without the Beneficial debtors becoming members of the limited liability company.

The Beneficial debtors made these alleged assignments in order to invoke federal court jurisdiction, and because by assigning their claims to the Plaintiff, it can attempt to assert all of their claims at once without meeting the class action requirements. The Beneficial debtors who allegedly assigned their claims are the only entities that had any relationship of any kind to either Defendant, central to the Court's consideration of whether there was a duty between claimants and Defendants.

There is no substance underlying these alleged assignments – the Beneficial debtors do not even mention the alleged assignments in their reorganization plan. Plaintiff alleges only claims that, absent the sham assignment found in the Plan, would have to be litigated, individually (or as a class after further litigation) in the state courts. Because recovery on the claims plaintiff asserts will benefit Beneficial's investors, the investors, as assignors, are not without an interest in the outcome of their litigation. The alleged assignments allow plaintiff to bear the risks of this litigation while providing for recovery by the assignors. Plaintiffs cannot present any evidence that assignment of the Beneficial debtors' claims was not the result of collusion and simply an attempt to invoke the federal court's jurisdiction.

### 2. Similarly, All Claims Asserted as Assigned by PES Must Be Dismissed.

Plaintiff also seeks to assert claims on behalf of Premium Escrow Services, Inc., from which bankruptcy plaintiff came into existence. Plaintiff has asserted, as noted *supra*, that PES assigned its claims against Defendants to plaintiff. Plaintiff has not asserted, however, any facts which would give rise to a duty between PES and Defendants. Plaintiff does not assert that Defendants created any life expectancy projections on PES' behalf. Nor could they. Indeed, plaintiff's Second Amended Complaint states that Defendant William Sanchez had an "agreement with Beneficial," to make life expectancy projections. (Second Amended Complaint ¶ 44.) Although plaintiff alleges that PES relied upon Defendants' life expectancy projections, it has alleged no facts upon which the right to rely, that is, a duty, could exist.

Plaintiff has not alleged that PES is a successor in interest to the Beneficial entities. In fact, plaintiff's Second Amended Complaint alleges that, although the Beneficial entities marketed the investment opportunities to potential investors, it was certain escrow agents "designated" by the Beneficial entities that were the record owners of the investment policies. (*See, e.g.,* Second Amended Complaint ¶¶ 17, 18, 19.) Thus, when PES was created in 2001, it was not a successor in interest to the Beneficial entities at all, but rather simply took over ownership of insurance policies previously owned by certain "designated" escrow agents. (Second Amended Complaint ¶ 19.)

Plaintiff's claims with respect to PES must therefore similarly be dismissed because plaintiff has alleged no facts which would give rise to a duty owed by Defendants to PES.

### 3. With Respect to Counts 1 and 3 of the Second Amended Complaint, Damages Are Sought on Behalf of the "Receiver," Who Is Not a Party to This Proceeding.

The sole plaintiff in this proceeding is Premium of America, LLC. (Second Amended Complaint ¶ 1.) Plaintiff has designated itself "POA" for short-hand purposes in the Second Amended Complaint (Second Amended Complaint Introduction.) No where in the Second Amended Complaint has plaintiff designated itself for short-hand purposes "Receiver," nor is there any reason to believe that this designation would be appropriate, given plaintiff's contention that: "POA was established pursuant to the Amended Plan of Reorganization of Premium Escrow Services, Inc. ("PES" or the "Debtor"), confirmed on August 11, 2003 and entered on August 12, 2003 (the "PES Plan")." (Second Amended Complaint ¶ 1.) The accompanying footnote indicates: "Under the PES Plan, POA was originally named Premium of Maryland, LLC. Premium of Maryland, LLC's name was changed to POA on August 19, 2003. The term "POA," as used in the Complaint, shall mean, collectively Premium of Maryland, LLC, and POA." (Second Amended Complaint at n.1.) None of the subsequent paragraphs of the Second Amended Complaint define "Receiver." As a result, Plaintiff has not asserted any claim for relief in Counts 1 and 3 and both should be dismissed in their entirety.

### 4. In Count 3 of the Second Amended Complaint, Plaintiff Has Not Alleged That Defendants Breached a Duty Owed to PES.

To the extent Count 3 is not dismissed in its entirety for the reasons discussed *supra*, any claims asserted on behalf of PES should be dismissed. Count 3 states a claim for "Gross Negligence." Plaintiff has not stated the necessary element of a duty owed by Defendants with respect to PES. Paragraph 67 of the Second Amended Complaint provides: "Defendants breached the duty they owed to Beneficial and its investors by providing grossly inaccurate life expectancy projections on most viators." Plaintiff has not asserted that Defendants breached a

duty of care, assuming *arguendo* such a duty was owed, owed to PES. Any claims asserted under this count by POA on behalf of PES must be dismissed.

**B. The Allegations Asserted as Assigned By "Beneficial's Investors" Must Be Dismissed as Improperly Asserted and Untimely.**

The District of Columbia employs a three year statute of limitations. As a result, plaintiff's claims are now untimely and, based on evidence submitted by plaintiff during the court of litigation in the Bankruptcy Court, were untimely when originally brought. Even if plaintiff's claims were not untimely when originally brought, plaintiff has not requested that its amendment "relate back" to the original filing in this case, and any such request should be denied.

**1. Plaintiff's Assertion of the Claims Assigned By "Beneficial's Investors" and Claims Purported to Be Assigned by the Beneficial Entities Were Dismissed from This Litigation by the Bankruptcy Court and Re-Alleging Jurisdiction in This Court Should Not Amend Those Claims Back Into This Litigation.**

On May 23, 2006, the Bankruptcy Court dismissed plaintiff's claims relating to damages allegedly suffered by investors in the viatical life insurance policies and the Beneficial entities.[2] No appeal was taken, although plaintiff filed a motion to vacate the order on June 2, 2006 in the Bankruptcy Court. That motion was denied on June 13, 2006. No appeal was filed with respect to the Bankruptcy Court's denial of the motion to vacate. The reference to the Bankruptcy Court was withdrawn by this Court on July 27, 2006. In August, plaintiff filed a motion for leave to file a motion for leave to cure defective allegations of jurisdiction pursuant to 28 U.S.C. § 1653.

---

[2] The Bankruptcy Court ordered that "all counts in the amended complaint filed by plaintiff Premium of America, LLC in this adversary proceeding (D.E. No. 9, filed February 2, 2005) are DISMISSED except insofar as those counts refer to causes of action previously held by the debtor Premium Escrow Services, Inc." (Order at 2.) The Bankruptcy Court's order is unclear whether this dismissal was with prejudice or without prejudice, as a result, Defendants make arguments applicable in either situation.

#585887v.1                           11

The purpose of this motion was to amend the First Amended Complaint to re-assert claims brought on behalf of the investors and Beneficial entities, which had been dismissed in May. Although this motion was granted over Defendants' opposition, the Court only granted plaintiff the *opportunity* to amend its defective allegations of jurisdiction (the relief requested in the motion) – plaintiff improperly amended its complaint to re-assert the investor-related claims and claims assigned by the Beneficial entities as well.

Importantly, the Bankruptcy Court's decision is final. It was not, as requested by the plaintiff, vacated by that Court and has not been appealed. The investor-related claims were, as of May 23, 2006, no longer part of this litigation. Conceptually, this Court could only withdraw the reference with respect to claims remaining after the Bankruptcy Court's Dismissal Order. Plaintiff attempts to side-step this conclusion and its failure to appeal the Bankruptcy Court's decision by amending its complaint for the second time. Where a cause of action has been dismissed, it cannot simply be amended back into the action. Plaintiff's complaint was not dismissed in its entirety, but simply withdrawn to this Court for further litigation. The Bankruptcy Court had already considered and dismissed the claims assigned by the investors and asserted on behalf of the Beneficial entities *in this litigation*. *See, e.g., Williams v. Board of Trustees of Mt. Jezreel Baptist Church*, 589 A.2d 901, 907 (D.C. 1991) ("The law of the case doctrine 'bars a trial court from reconsidering the same question of law that was submitted to and adjudicated by another court of coordinate jurisdiction.' *Weinberg v. Johnson*, 518 A.2d 985, 987 (D.C. 1986). 'This serves the judicial system's need to dispose of cases efficiently by discouraging 'judge-shopping' and multiple attempts to prevail on a single question.' *Tompkins v. Washington Hospital Center*, 433 A.2d 1093, 1098 (D.C. 1981) (quoting *Kritsidimas v. Sheskin*, 411 A.2d 370, 371 (D.C. 1980)).")." *See also Elmore v. Henderson*, 227 F.3d 1009 (7th

Cir. 2000) ("[A] suit that has been dismissed with prejudice cannot be refilled; the refiling is blocked by the doctrine of res judicata.") (quoted in *Ciralsky v. Central Intelligence Agency*, 355 F.3d 661, 669-70 (D.C. 2004). Thus, because the Bankruptcy Court's dismissal was with prejudice, plaintiff's claims as assigned by the investors and asserted on behalf of the Beneficial entities are barred by the doctrine of *res judicata*.

        2.    District of Columbia Substantive Law Provides a Three Year Statute of Limitations in Tort.

POA states claims for negligence, negligent misrepresentation, and gross negligence. If the Bankruptcy Court's dismissal was without prejudice, plaintiff's claims as assigned by the viatical investors and asserted on behalf of the Beneficial entities are now barred by the statute of limitations. POA's Second Amended Complaint indicates that jurisdiction in this Court is based upon diversity of citizenship. Defendants are citizens of the District of Columbia. Although POA has not indicated which jurisdiction's substantive law will apply in this proceeding, it has presented no facts which would indicate the law of any jurisdiction other than the District of Columbia is applicable.

Section 12-301 of the District of Columbia Code provides a three year statute of limitations in professional negligence-type actions. *Bradley v. NASD Dispute Resolution, Inc.*, 245 F.Supp.2d 17 (D.D.C. 2003), *aff'd*, 433 F.3d 846 (D.C. 2005). "'Generally, a cause of action is said to accrue at the time the injury occurs.'" *Morton v. Nat'l Medical Enterprises, Inc.*, 725 A.3d 462, 468 (D.C. 1999). Pursuant to the plaintiff's own claims in the Second Amended Complaint and other pleadings in this proceeding, the statute of limitations has run.

Plaintiff's claims are all premised on the allegation that Defendants made life expectancy projections which were inaccurate. (*See, e.g.,* Second Amended Complaint ¶¶ 47-48.)

According to plaintiff's Second Amended Complaint, the inaccuracy of those projections resulted in losses to certain investors. (Second Amended Complaint ¶ 49.)

Plaintiff attached, to its Opposition to Defendants' Motion to Dismiss (filed in the Bankruptcy Court), an expert report, submitted by Joel E. Gallant, M.D., M.P.H. According to Dr. Gallant's report:

> 5. Given the development in the treatment of HIV-infected patients described above, every physician who was knowledgeable about such treatment should have, by July of 1996: (a) known that the life expectancy of HIV-infected patients could no longer be accurately projected; and (b) ceased making life expectancy evaluations for HIV-infected patients.
>
> 6. Moreover, physicians who were not HIV/AIDS experts or knowledgeable about the treatment of HIV-infected patients as of July of 1996 were not qualified to make life expectancy projections for these patients. Nevertheless, given the publicity described above in paragraph 1, even general practitioners without expertise in infectious disease should have been aware by July of 1996 of the drastic improvements in treatment options that would soon be available to HIV-infected patients.

(Report of Joel E. Gallant, M.D., M.P.H. ("Gallant Report," attached as **Exhibit 1** hereto) ¶¶ 5-6.) The Gallant Affidavit further notes that Defendant Sanchez performed one hundred forty-seven (147) life expectancy projections between August 23, 1996 and January 6, 1999. (Gallant Report ¶ 7.)

Thus, if plaintiff was injured as it asserts, it was injured at the time Defendants made their life expectancy projections. The Gallant Report is clear – plaintiffs allege that they were damaged by inaccurate life expectancy projections and Dr. Gallant indicates that those life expectancy projections were inaccurate at the time they were made.[3] The statutes of limitations began to run, therefore, when those projections were made – between August 23, 1996 and

---

[3] Defendants assume, only for purposes of determining the date of injury, that an injury has occurred. With respect to liability issues, Defendants vigorously deny that plaintiff, or any of the assignor entities, has been injured and/or damaged.

January 6, 1999. As a result, the last possible date upon which plaintiff, or its assignors, could have brought these claims against Defendants was January 2002 – nearly two years prior to the date plaintiff's adversary proceeding in the Bankruptcy Court was instituted and nearly four years prior to the date this Second Amended Complaint was docketed.[4]

In cases where "the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs," the District of Columbia courts have applied the "discovery rule." *Morton, supra*, 725 A.2d at 468. In cases where the discovery rule is applicable, the cause of action does not accrue until "one must know or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) of *some evidence* of wrongdoing." *Id*. The discovery rule does not, however, give an injured party carte blanche to defer legal action while his or her injuries progress. *Id.*

> 3.  Even Applying the "Discovery Rule," the Date of Accrual of Plaintiff's Claims Was More than Three Years Prior to the Filing of the Present Suit.

Plaintiff also attached, to its Opposition to Defendants' Motion to Dismiss (filed in the Bankruptcy Court), an affidavit, which provides facts that demonstrate that the statute of limitations has run in this case, even assuming that the discovery rule applies. Francis P. Dicello ("Dicello") was Lead Counsel to the Official Committee of Unsecured Creditors of Premium Escrow Services, Inc. ("Committee"). (Affidavit of Francis P. Dicello ("Dicello Affidavit," attached hereto as **Exhibit 2**) ¶ 2.) During his work with the Committee, prior to confirmation of the reorganization plan discussed *supra*, Dicello indicated that the Committee discussed that "Many of the policies were *several years* past the anticipated maturity dates given to investors at

---

[4] There are no specific allegations with respect to the timing of Defendants' actions contained in the Complaint, First Amended Complaint, or Second Amended Complaint. The Gallant Affidavit was not provided until January 23, 2006.

the time they acquired their interest." (Dicello Affidavit ¶ 7.d.) Attached as Exhibit 2 to the Dicello Affidavit is a report from the Committee, dated May 15, 2003, which states in part: "Beneficial has no funds to continue to pay premiums due in the future."

Thus, at the time of the bankruptcy filing in this case and shortly thereafter, the investors knew or should have known that Defendants' life expectancy projections were "grossly inaccurate," as alleged. Because the damages alleged in this case are that the "return to investors has been delayed and diminished," these damages were also apparent by the time the viators lived beyond Defendants' life expectancy projections. (Second Amended Complaint ¶ 49.)

These statements were made or refer to the time of the bankruptcy filing – November 2002. As a result, even assuming the discovery rule is applicable, the statute of limitations for bringing a negligence action against Defendants began to run no later than November 2002 and the claims were barred by November 2005. Claims concerning investors were dismissed by the Bankruptcy Court, no appeal was taken, and Plaintiff's Second Amended Complaint was not docketed until November 21, 2006.

> *i. Plaintiff Should Not Be Permitted To "Relate Back" These Claims to the Suit as It Existed When This Court Withdrew the Reference to the Bankruptcy Court.*

Assuming this Court applies the "discovery rule" to any harm to plaintiff, plaintiff's amendment of the First Amended Complaint to reincorporate the investor-related claims should not "relate back" to the date of filing in the Bankruptcy Court. To permit relation back would negate the decision of the Bankruptcy Court and the lengthy and expensive litigation of the past year. Plaintiff vigorously opposed Defendants' Motion to Withdraw the Reference, yet now seek to invoke the jurisdiction of this Court.

To the extent plaintiff is permitted to amend its complaint to re-state the investor-related claims, that amendment should not be permitted to relate back to the date of filing in the

Bankruptcy Court.  Once the claims were dismissed, "'the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Ciralsky, supra*, 355 F.3d at 672.

### C. The Debtor's Plan Manufactured Jurisdiction to Side-Step the Requirement that Plaintiff Either Assert Claims on Behalf of Individual Investors or Proceed with Class Certification.

Through the reorganization plan, the investors assigned whatever individual claims they might have to plaintiff.  The assignments permit plaintiff to assert whatever claims the individual investors might have against various parties, including Defendants.  Those assignments do not give rise to a class.  However, plaintiff attempts to assert the claims by class.  The First Amended Complaint contains no reference to harm to any individual investor, nor does it even name any individual investor who may have been harmed by Defendants.  The First Amended Complaint groups all of the individual investors together and asserts that each has suffered the same wrongs by the Defendants' life expectancy projections.  Absent the assignments of the investors' claims, there would be no grounds to assert the claims as a class without first undergoing class certification.

The Federal Rules of Civil Procedure require that certain, specific circumstances must be met before a class may be certified:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.Proc. 23(a).  Plaintiff has presented no evidence that the individual investors would have been able to present their claims as a class, absent assignment to the plaintiff.  The Second

Amended Complaint does not deal separately with each individual investor's claims, but assumes that each has suffered the same damages, making sweeping allegations applicable to all investors. Plaintiff's Second Amended Complaint does not even differentiate between investors who were assigned viatical policies for which Defendants provided the Debtor with some sort of evaluation or projection. As noted previously, each investor claim is different, because some investors did not purchase viatical policies for which Defendants provided life expectancy projections, some may not have relied on the information furnished to the Debtor by the Defendants and, if they relied at all, that reliance would necessarily be different for each investor.

Certification as a class allows plaintiffs to present representative proof on behalf of a larger group of claimants. Because class certification may ease the volume of proof a plaintiff must present, "the party moving for class certification … bear[s] the burden of establishing that the requirements for class certification as set forth in Rule 23 of the Federal Rules of Civil Procedure, have been satisfied." *Does I through III v. District of Columbia*, 232 F.R.D. 18, 24 (D.D.C. 2005). In addition to the requirements found in F.R.C.P 23(a), the party seeking to assert claims on behalf of a class must meet the requirements of F.R.C.P. 23(b):

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.Pro. 23(b).

The effect of the assignments is to side-step class certification requirements by obtaining assignments from the individual investors, and improperly seeking to combine the claims of individual investors into a single action without demonstrating that the investors do, in fact, constitute a class.  Under the circumstances, the assignments were improper because it permitted the plaintiff to assert claims as if representing a class that the individual investors would not have been able to assert as a class without meeting the requirements of F.R.C.P. 23(a).

## IV.   CONCLUSION.

Plaintiff's attempts to assert the claims assigned by the investors and Beneficial entities are barred.  If the Bankruptcy Court's dismissal of those claims was with prejudice, then the claims are barred by the doctrine of *res judicata*.  Even if the Bankruptcy Court's dismissal of those claims was without prejudice, then the statute of limitations has run with respect to the claims.  See, e.g., Ciralsky, supra, 355 F.3d at 672 n.11.

The remaining claims, those assigned by PES, should also be dismissed with prejudice because plaintiff has alleged no facts which would give rise to a duty owed by Defendants to PES.

Respectfully Submitted,

December 22, 2006

/s/ Alan M. Grochal
Alan M. Grochal, DC Bar No. 315218
Stephen M. Goldberg, DC Bar No. 339705
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
(410) 752-9700


/s/ Brian Nash
Brian Nash, Esq., DC Bar No. 230771
Nash & Associates, LLC
809 Gleneagles Court, Suite 201
Towson, Maryland 21286
(410) 321-6660

*Counsel for Defendants William C. Sanchez, M.D. and William C. Sanchez, M.D., P.C.*