**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PREMIUM OF AMERICA, LLC** | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| **WILLIAM C. SANCHEZ, M.D.** | * | **Case No. 1:06-cv-01325-RJL** |
| **and** | * | |
| **WILLIAM C. SANCHEZ, M.D., P.C.,** | * | |
| **Defendants.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
REPORT REGARDING STATUS OF DISCOVERY**

Defendants, William C. Sanchez, M.D., and William C. Sanchez, M.D., P.C. (collectively, "Defendants"), by and through their counsel hereby respond to Plaintiff Premium of America, LLC's Report Regarding Status of Discovery. Plaintiff's Report Regarding Status of Discovery was not requested by this Court, nor is it mandated or invited by any Rule. Further, the report is, in fact, a request for significant relief, as it is asking the Court to "disallow further discovery on the merits of POA's claims." (Plaintiff's Report at 5.)

As a result, it should be stricken from the record or, in the alternative, Plaintiff's request that no further discovery be permitted should be denied.

## I.    INTRODUCTION.

This proceeding was initially filed in the United States Bankruptcy Court for the District of the District of Columbia ("Bankruptcy Court") in November 2004. Plaintiff, Premium of America, LLC ("POA"), filed its First Amended Complaint on February 2, 2005. Defendants

subsequently filed a motion to dismiss the bulk of POA's First Amended Complaint for lack of subject matter jurisdiction, which was granted on May 23, 2006. POA did not appeal the Bankruptcy Court's decision. The Bankruptcy Court *sua sponte* recommended that this Court withdraw the reference to the remaining claims, which this Court subsequently did on July 27, 2006.

Subsequent to this Court's action, POA filed a motion seeking to amend its jurisdictional claims to permit it to re-assert, in this Court, the claims previously dismissed by the Bankruptcy Court. Defendants opposed the motion, but it was granted on September 19, 2006. On November 20, 2006, this Court entered a Case Management Order, which POA was to serve upon Defendants "immediately." The Court also issued a show cause order, although POA's Second Amended Complaint was eventually docketed on November 21, 2006.

Defendants were not served with this Court's Case Management Order until December 6, 2006, when they were also served with POA's self-serving Report Regarding Status of Discovery ("Status Report") and Response to Minute Order to Show Cause.

On December 21, 2006, as ordered by this Court, Defendants served their Motion to Dismiss this proceeding in its entirety.

## II.     THE STATUS REPORT SHOULD BE STRICKEN.

POA's Status Report is, at best, premature and does not comply with the requirements of this Court's Case Management Order. The Case Management Order orders the parties to confer pursuant to Federal Rule 26(f) and Local Civil Rule 16.3 "within 30 days of all defendants answering the complaint or filing other motions under Rule 12(b) of the Federal Rules of Civil Procedure." Within fourteen days of that conference, counsel is required to submit a *Joint* Meet and Confer Statement and a proposed scheduling order. Defendants filed their motion to dismiss

on December 21, 2006, and no conference has occurred – the Status Report is, at best, premature and, in any event, devoid of merit.

Further, the Case Management Order requires submission of a Joint Meet and Confer Statement and proposed scheduling order. Defendants were not consulted prior to POA's filing of the Status Report, and the Status Report does not reflect Defendants' position with respect to discovery, which will be substantively discussed *infra*. Rather than adhere to the Court's requirements, POA instead opted to file what is essentially a motion to close discovery before Defendants' response to the Second Amended Complaint was even due.

### III.   PLAINTIFF'S REQUEST THAT NO FURTHER <br> DISCOVERY BE TAKEN SHOULD BE DENIED.

POA's Status Report is, in essence, a motion arguing that "the parties engaged in extensive discovery" in the Bankruptcy Court and, therefore, no additional discovery is warranted in this case. (*See, e.g.,* Status Report at 1, 5.) Although the parties exchanged some written discovery and documents in the Bankruptcy Court, they did not engage in the extensive discovery alleged. For example, no depositions were taken by either party.

In this proceeding, POA seeks to assert the individual claims of its thousands of members against Defendants. Briefly, POA has factually alleged that its predecessor(s) in interest were in the business of selling the life insurance policies of terminally ill patients as investments. POA has alleged that Defendant William C. Sanchez, M.D. was retained by certain entities to make life expectancy projections, and that Defendant Sanchez was negligent in his projections. POA's Second Amended Complaint does not allege how many life expectancy projections Defendant Sanchez rendered, how those projections were communicated to any entity, or when the projections were made.

POA seeks to assert claims, apparently, on behalf of three "classes" of entities: (1) the "Beneficial" entities; (2) an entity called Premium Escrow Services, Inc.; and (3) investors in both the "Beneficial" entities and Premium Escrow Services, Inc.

As a result, Defendant have, in fact, made 584 requests for admissions, in an attempt to determine, on a name-by-name basis, whether each viator was alive or dead and whether each viator's insurance policy was active or not. Similarly, the number of interrogatories and requests for production of documents is quite reasonable given the sheer scope of claims that POA seeks to assert in this single action.

The amount of discovery taken during the Bankruptcy Court action was also limited because of the procedural posture of the case. In the Bankruptcy Court, the Defendants filed a motion to dismiss some of POA's claims on the grounds that the Bankruptcy Court lacked jurisdiction over them. Thus, Defendants filed a motion to stay discovery pending the resolution of that motion.

> A.    *The Bankruptcy Court Determined that No Discovery was Required on the Investor-Related Claims, because the Court Lacked Jurisdiction Over Those Claims from the Initial Date of Filing.*

The Bankruptcy Court (Judge Teel), in fact, dismissed all of the "investor-related claims," as that term was defined by the parties in that Court. Based on that ruling, Judge Teel further held that no discovery on the investor-related claims was required in that action because the Court never had jurisdiction over those claims. Recognizing that POA might seek to re-assert the investor-related claims in this Court, Judge Teel made clear:

> If jurisdiction is ruled to exist in the district court over the investor-related claims, it would appear that the defendants would be entitled to a discovery schedule as to such claims; they could not be bound by a discovery deadline set as to the

> investor-related claims in the bankruptcy court as the bankruptcy court has no jurisdiction over those claims.

Order of Judge Teel, June 13, 2006.

The Bankruptcy Court has expressly ruled that it had no jurisdiction over the investor claims and that the Defendants could not be bound by the discovery deadline in the Bankruptcy Court. In the event that this Court rules that the Plaintiff's claims can go forward, and that it has jurisdiction over the investor-related claims, Defendants would be entitled to discovery on those claims. POA, through the Status Report, seeks to foreclose discovery on all claims, despite the explicit ruling by the Bankruptcy Court that Defendants were not bound by the discovery deadline in that court, and that Defendants would be entitled to discovery in the event the District Court subsequently allowed the investor-related claims to proceed.

Further, although Judge Teel denied Defendants' motion to stay discovery with respect to the claims asserted on behalf of Premium Escrow Services, Inc. ("PES"), Defendants are entitled to discovery on the PES claims, as they are intertwined with the investor-related claims. Furthermore, given that the Plaintiff has filed what is essentially a new action in a new court, Defendants are also entitled to an entirely new scheduling order.

> **B.  Significant Changes to POA's Substantive Allegations**
> **have Occurred Since POA's Discovery Commenced, Including a**
> **New Action Filed with Conflicting Allegations.**

In its motion, POA further argues that no discovery should be allowed because POA's substantive allegations have not changed since discovery commenced in Spring 2005. (Status Report at 1-2.) However, since Spring 2005, POA has made numerous new allegations that could materially alter its case against these Defendants. Most importantly, on or about August 7, 2006, POA filed a Complaint in the Circuit Court of Maryland for Baltimore City against approximately nineteen individually named defendants, including former officers, trustees, and

brokers associated with the Beneficial entities (the "Baltimore City Action"). POA also included as defendants in that action more than 700 "selling agents," those individuals who sold the investments to the individual investors, and is attempting to certify those defendants as a class.

A cursory review of the allegations in the Baltimore City Action reveals that POA's allegations against Dr. Sanchez will be materially impacted by the allegations POA is now making against these hundreds of defendants. In the Baltimore City Action, POA alleges massive wrongdoing on the part of former officers, trustees, brokers, and agents, and is seeking the very same damages in that case that are at issue in the present case, namely millions of dollars of financial injury to the Beneficial investors.

Directly impacting on this case, in the Baltimore City Action, POA alleges that Dr. Sanchez, although not a named party in that case, was an "active and knowing participant[ ] in the conspiracy as alleged herein." (Complaint at ¶ 55.) This allegation stands in marked contrast to the allegations in this case, which sound only in negligence. Such a change in position represents a new allegation which requires investigation to prevent ambush at trial.

The Baltimore City Action also presents a marked change in POA's position regarding whether additional individuals or entities caused harm to POA. In the case at bar, Defendants asked POA in Interrogatory No. 17 to identify all entities POA alleged had caused harm to Beneficial investors. In response, POA named only Defendants, as well as the other doctors who allegedly rendered life expectancy projections:

> INTERROGATORY NO. 17: List all individuals and/or entities whom POA alleges have caused Beneficial investors to suffer damages, including a summary of the action(s) taken by each such individual or entity and a summary of any legal and/or investigatory action taken against each such individual or entity by POA.

> ANSWER: Subject to and without waiving the General Statements and Objections, POA states that the Defendants in this action and the persons

> identified in the answer to Interrogatory No. 4 [other reviewing physicians only] have caused POA to suffer damages. The Amended Complaint provides a description of how the actions of these persons caused such damages. However, POA's investigation is ongoing, and POA will supplement this answer if necessary.

To date, POA has not supplemented its answer to this interrogatory.

POA's stated position in this case that only the reviewing doctors caused damages to the investors is at odds with its position in the Baltimore City Action that hundreds of other individuals associated with Beneficial engaged in negligence, fraud, and civil conspiracy to cause harm to the Beneficial investors. This allegation alone represents a significant change in position that requires substantial discovery.

The Baltimore City Action also materially changes the nature of POA's allegations regarding reliance. In the instant case, POA alleged that the Beneficial entities, PES, and the investors all relied on Dr. Sanchez' life expectancy projections in bidding on and purchasing life insurance policies. In the Baltimore City Action, POA makes different allegations regarding reliance. For example, POA alleges in that action that the Beneficial officers, directors, employees, agents, brokers, and viators "all knew or should have known that the life expectancy evaluations provided by the Beneficial physicians were inaccurate, unreliable, and artificially low." (Complaint at ¶ 78.) The Complaint further alleges that the "Beneficial Officers knowingly procured false life expectancy determinations from the Beneficial Physicians." (Complaint at 22 (Heading C).) These new allegations could materially alter POA's case against Defendants regarding Beneficial's and PES' alleged reliance. Discovery is clearly warranted as to these new allegations, both on the investor-related claims and the PES claims.

The Baltimore City Action further alleges that the "Purchasers [i.e., investors] justifiably did rely upon the representations of the *Beneficial Agents* in deciding to purchase Viatical

Investments from the Beneficial Companies, and the Purchasers were harmed thereby." (Complaint at ¶ 119 (emphasis added).) These are new allegations that were not raised in the present case, and seriously call into question POA's allegations regarding reliance on Defendants, as POA now alleges that the selling agents engaged in serious acts of malfeasance in connection with the investors, and that the investors relied on the agents in deciding to invest. This represents a marked change in position on the part of POA, and requires discovery to determine the merit of POA's allegations.

In sum, POA alleged in the instant action that only Dr. Sanchez (and the other reviewing doctors) caused harm to the Plaintiff. POA has now alleged in another action that hundreds of new defendants were engaged in a "Ponzi scheme." (Complaint at ¶ 6.) These are all new allegations that were not previously asserted in the case at bar, and they seriously impact the causation and damages aspect of POA's claims against Dr. Sanchez.

The Baltimore City Action filed by POA also undermines its contention in its Status Report that discovery should be closed "to avoid additional expense to POA." (Status Report at 5.) First, POA is the one that filed this action, and cannot now claim undue expense as a reason to avoid discovery. Second, POA has filed a 76-page Complaint in Baltimore City against hundreds of new defendants. POA also states in that Complaint that it has filed a separate action in California against other defendants. One can presume that POA will be engaging in extensive discovery in those actions. Therefore, it is disingenuous for POA to argue that it should be spared the expense of having to engage in discovery in its case against Defendants.

IV.    **CONCLUSION**

This Court's Case Management Order requires the parties to confer pursuant to Federal Rule of Civil Procedure 26(f) and the Local Rules, and submit a Joint Meet and Confer

Statement, within thirty (30) days of Defendants' filing of a responsive pleading. The Order did not invite a Status Report, with respect to which Defendants were not consulted, and the Status Report should be stricken. If the Court determines that the Status Report should not be stricken, and treats the Status Report as a motion to foreclose further discovery, the motion should be denied. For the reasons stated above, POA's allegations against Defendants have changed dramatically since discovery began and POA has not yet fully responded to outstanding discovery.

Dated: December 26, 2006

/s/ Alan M. Grochal
Alan M. Grochal, DC Bar No. 315218
Stephen M. Goldberg, DC Bar No. 339705
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
(410) 752-9700

/s/ Brian Nash
Brian Nash, Esq., DC Bar No. 230771
Nash & Associates, LLC
809 Gleneagles Court, Suite 201
Towson, Maryland 21286
(410) 321-6660

*Counsel for Defendants William C. Sanchez, M.D.*
*and William C. Sanchez, M.D., P.C.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this 26th day of December, 2006, a copy of the foregoing

Defendants' Response to Plaintiff Premium of America, LLC's Report on Status of Discovery

was either sent electronically or mailed first class, postage prepaid to:

Paul S. Caiola, Esq.
David G. Sommer, Esq.
Gallagher Evelius & Jones, LLP
218 N. Charles Street, Suite 400
Baltimore, Maryland 21201


                                        /s/ Alan M. Grochal
                                        Alan M. Grochal